UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

02 FEB 20 PH 12: 05

U.S. DISTRICT COURT
N.D. OF ALABAMA

THE HEALTH CARE AUTHORITY )
OF ATHENS AND LIMESTONE )
COUNTY, d/b/a ATHENS- )
LIMESTONE HOSPITAL, )
                      )
       **Plaintiff,** )
                      )
**vs.** )              **Civil Action No. CV-01-S-2544-NE**
                      )
**TOMMY G. THOMPSON,** )
**SECRETARY OF HEALTH AND** )
**HUMAN SERVICES, IN HIS** )
**OFFICIAL CAPACITY,** )
                      )
       **Defendant.** )

ENTERED

FEB 2 0 2002

## MEMORANDUM OPINION

Plaintiff, the Health Care Authority of Athens and Limestone County, Alabama, doing

business as the Athens-Limestone Hospital, filed a complaint on October 10, 2001, seeking recovery

of a Medicaid reimbursement in the amount of $63,208, pursuant to 42 U.S.C. § 1395oo(f).[1]

---

[1]Complaint (doc. no. 1) ¶¶ 8, a.  42 U.S.C. § 1395oo(f) provides:

**(f) Finality of decision; judicial review; determinations of Board authority; jurisdiction; venue; interest on amount in controversy**

      (1) A decision of the [Provider Reimbursement Review] Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision.  Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received.  Providers shall also have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines (on its own motion or at the request of a provider of services as described in the following sentence) that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received.  If a provider of services may obtain a hearing under subsection (a) of this section and has filed a request for such a hearing, such provider may file a request for a determination by the Board of its authority to decide the question of law or regulations relevant to the matters in controversy (accompanied by such documents and materials as the Board shall require for purposes of rendering such determination).  The Board shall render such determination in writing within thirty days after the

Plaintiff originally named the following entities and person as defendants:   the Provider

Reimbursement Review Board of the United States Department of Health and Human Services;

Thomas Scully, Administrator of the Provider Reimbursement Review Board, in his official capacity

only; and Blue Cross and Blue Shield of Alabama.[2]   Pursuant to 42 U.S.C. §§ 1395h(a)[3] and

---

Board receives the request and such accompanying documents and materials, and the determination shall be considered a final decision and not subject to review by the Secretary.  If the Board fails to render such determination within such period, the provider may bring a civil action (within sixty days of the end of such period) with respect to the matter in controversy contained in such request for a hearing. Such action shall be brought in the district court of the United States for the judicial district in which the provider is located (or, in an action brought jointly by several providers, the judicial district in which the greatest number of such providers are located) or in the District Court for the District of Columbia and shall be tried pursuant to the applicable provisions under chapter 7 of Title 5 notwithstanding any other provisions in section 405 of this title. Any appeal to the Board or action for judicial review by providers which are under common ownership or control or which have obtained a hearing under subsection (b) of this section must be brought by such providers as a group with respect to any matter involving an issue common to such providers.

(2) Where a provider seeks judicial review pursuant to paragraph (1), the amount in controversy shall be subject to annual interest beginning on the first day of the first month beginning after the 180-day period as determined pursuant to subsection (a)(3) of this section and equal to the rate of interest on obligations issued for purchase by the Federal Hospital Insurance Trust Fund for the month in which the civil action authorized under paragraph (1) is commenced, to be awarded by the reviewing court in favor of the prevailing party.

(3) No interest awarded pursuant to paragraph (2) shall be deemed income or cost for the purposes of determining reimbursement due providers under this chapter.

[2]Complaint (doc. 1) ¶¶ 4-5.

[3]42 U.S.C. § 1395h(a) provides:

**(a) Authorization for agreement by Secretary for implementation; scope of agreement**

If any group or association of providers of services wishes to have payments under this part to such providers made through a national, State, or other public or private agency or organization and nominates such agency or organization for this purpose, the Secretary is authorized to enter into an agreement with such agency or organization providing for the determination by such agency or organization (subject to the provisions of section 1395oo of this title and to such review by the Secretary as may be provided for by the agreement) of the amount of the payments required pursuant to this part to be made to such providers (and to providers assigned to such agency or organization under subsection (e) of this section), and for the making of such payments by such agency or organization to such providers (and to providers assigned to such agency or organization under subsection (e) of this section). Such agreement may also include provision for the agency or organization to do all or any part of the following: (1) to provide consultative services to institutions or agencies to enable them to establish and maintain fiscal records necessary for purposes of this part and otherwise to qualify as hospitals, extended care facilities, or home health agencies, and (2) with respect to the providers of services which are to receive payments through it (A) to serve as a center for, and communicate to providers, any information or instructions furnished to it by the Secretary, and serve as a channel of communication from providers to the Secretary; (B) to make such audits of

1395oo(f),[4] however, and upon defendants' motion,[5] the court substitutes Tommy G. Thompson, Secretary of the United States Department of Health and Human Services, in his official capacity, as the real party in interest. The action now is before the court on defendant's motion to dismiss or, in the alternative, for summary judgment.

If matters outside the pleadings are presented to and considered by the court when ruling upon a Rule 12(b)(6) motion to dismiss, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Rule 12(b), Fed. R. Civ. P.; *see also, e.g., Arnold v. United States Postal Service*, 649 F. Supp. 676, 678 (D. D.C. 1986) (Richey, J.). This allows the court's inquiry to be fact specific and allows the nonmovant to demonstrate the existence of any genuine issues of material fact.

As the Eleventh Circuit noted in *Harris v. Ivax Corp.*, 182 F.3d 799 (11th Cir. 1999), however, "the usual rules for considering 12(b)(6) motions are ... bent" in three circumstances. *Id.* at 802 n.2. One occurs when copies of documents are *attached* to the plaintiff's complaint. *See Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1368 (11th Cir. 1997) (observing that 12(b)(6) motions are "limited primarily to the face of the complaint *and attachments thereto*") (emphasis added) (*citing* 5 Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 1356, at 590-92 (1969)).

Another occurs when a plaintiff *refers to* certain documents in the complaint, and those

---

the records of providers as may be necessary to insure that proper payments are made under this part; and (C) to perform such other functions as are necessary to carry out this subsection. As used in this subchapter and part B of subchapter XI of this chapter, the term "fiscal intermediary" means an agency or organization with a contract under this section.

[4]*See supra* note 1.

[5]Federal Defendant's Motion to Dismiss and/or For Summary Judgment (doc. no. 7).

documents are central to the plaintiff's claim.  In such a case,

> the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment. *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). ...

*Brooks*, 116 F.3d at 1369.  Nonetheless, the contents of such documents must not be in dispute. *Harris*, 182 F.2d at 802 n.2 ("[A] document central to the complaint that the defense appends to its motion to dismiss is also properly considered, *provided that its contents are not in dispute*.") (emphasis added).

The final circumstance in which documents other than the complaint may be taken into account without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment is not implicated here: *i.e.*, it occurs only in actions arising under the Private Securities Litigation Reform Act of 1995, § 102(b) of which "directs the district court to consider not only 'any statement cited in the complaint' but also 'any cautionary statement accompanying the forward-looking statement, which are [sic] *not subject to material dispute*, cited by the defendant.'" *Id.* (quoting 15 U.S.C. § 78u-5(e)).

In the present action, plaintiff attached three significant evidentiary documents to the complaint:  the Provider Reimbursement Review Board ("Board") Hearing Decision; plaintiff's petition for review of the Board's decision to the Administrator of the Board; and the Administrator's decision declining to review the Board's decision.  Defendant submitted three evidentiary documents in support of his motion to dismiss or, in the alternative, for summary judgment:  Blue Cross and Blue Shield of Alabama's Notice of Correction; a summary of Medicare

4

Part A settlement payments; and the Certified Administrative Record of Board proceedings. One of those documents, the Certified Administrative Record, is central to the complaint, because it elucidates the Board's Hearing Decision, which *is* attached to the complaint. The remaining two documents submitted by defendant are not mentioned in the complaint, however. Accordingly, this court finds that the proper treatment of defendant's motion is as a Rule 56 motion for summary judgment. As so considered, and following consideration of the pleadings, evidentiary submissions, and briefs, this court concludes that the motion is due to be denied.

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City*

*of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)) (internal quotation marks and citations omitted); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

## I. SUMMARY OF FACTS

Plaintiff instituted an appeal to the Provider Reimbursement Review Board on January 23, 1997.[6]  The Board held a hearing on November 14, 2000; and, on August 8, 2001, rendered the following decision:

ISSUE:

Was the Intermediary's [Blue Cross and Blue Shield of Alabama's] disallowance of the Provider's [Athens-Limestone Hospital's] Medicare Part B bad debts for deductibles and coinsurance proper?

STATEMENT OF THE CASE AND PROCEDURAL HISTORY:

Athens-Limestone Hospital ("Provider") is a non-profit general acute care hospital located in Athens [Limestone County], Alabama. In its Medicare cost report for the fiscal year ending September 30, 1994 the Provider claimed Part B bad debts for deductibles and coinsurance totaling $747,454.

The Intermediary treated the Provider's claimed costs for all closed cost reports as requests for reopening, and only allowed the bad debt expense for those periods within the three year reopening limitations.

Chapter 3, Section 300 of HCFA Pub. 15-1 was cited as the basis for the adjustment, which served to reduce Provider reimbursement by $241,362.  Subsequent to its audit, the Intermediary proposes to modify its disallowance to recognize as reimbursable additional claimed bad debts of $63,207.98, which are applicable to the fiscal year ending September 30, 1990.

On January 16, 1997, the Provider appealed the Intermediary's disallowance of bad debts to the Provider Reimbursement Review Board ("Board"), and has met the jurisdictional requirements of 42 C.F.R. §§ 405.1835-.1841....

...

FINDINGS OF FACT, CONCLUSIONS OF LAW AND DISCUSSION:

---

[6]Defendant's evidentiary submission (doc. no. 9), Exhibit 3, at 293.

6

The Board, after consideration of the facts, parties' contentions, evidence presented, testimony at the hearing, and post hearing briefs, finds and concludes as follows:

Upon review of the complete record presented by both parties, the Board finds that the main issue to be decided is an interpretation of when bad debts are deemed to be worthless. This is a question of fact that has to be determined based on the particular circumstances surrounding each case. The Board finds that testimony at the hearing revealed that the Provider's patients were determined to be indigent. As such, no attempts were made to collect deductibles and co-payments from those patients. In the instant cases, a review of the Provider's collection and billing policy indicated that the Provider wrote off all crossover bad debts, for accounting purposes, as soon as the Medicaid determination and payment was made. These amounts were then placed into a contractual allowance account for inclusion in the Medicare cost report and were no longer carried as accounts receivable. However, the Board finds that due to an oversight the Provider did not claim the bad debts in question (dating from 1985 to 1994) on the Medicare cost report until the September 30, 1994 Medicare cost report was filed.

The Board notes that the Provider's position paper contained the following summary of bad debts for which it is seeking reimbursement.

| Medicaid Remit Date | Amount |
| --- | --- |
| July/1985 - September/1986 | $33,614.02 |
| Oct./1986 - September/1987 | $27,591.60 |
| Oct./1987 - September/1988 | $54,702.95 |
| Oct./1988 - September/1989 | $62,245.10 |
| Oct./1989 - September/1990 | $63,207.98 (Subsequently Allowed by Intermediary) |

The Board finds that the Provider is basing its case for reimbursement primarily on the regulation at 42 C.F.R. § 413.80(f) which states in part that:

> amounts uncollectible from specific beneficiaries are to be charged off as bad debts in the accounting period in which the accounts are deemed to be worthless". [sic]

However, using that regulation in isolation ignores the basic definition of a bad debt found in 42 C.F.R. § 413.80(b)(1) which states in part:

> Accounts receivable and notes receivable are designations for claims arising from the furnishing of services, and are collectible in money in the relatively near future.

7

This is supplemented by the regulation at 42 C.F.R. [§] 413.80(e) which states in part:

> Sound business judgement [sic] established that there was no likelihood of recovery at any time in the future.

Applying these regulations as a whole, the Board finds that the Provider did not use sound business judgement [sic] in deferring its claims for reimbursement until fiscal year 1994. The Board concludes that the facts and testimony revealed that the accounts in question should have been deemed worthless and written off as a Medicare bad debt when the Medicaid program remittance advice was tendered to the Provider. The Provider did not demonstrate that any type of follow up or collection activity took place between the time it received the Medicaid remittance advice and the year it finally sought reimbursement. Accordingly, the Board finds that the Provider can not use the bad debt regulations to cure its admitted administrative omission. As such, the Board finds that the bad debts for the years 1986 through 1989 are not allowable for the reason stated above.

The Board also finds that while concurring with the Intermediary's disallowance, it is not in agreement with the basis used to support the adjustment. Nothing in the bad debt regulations indicate that bad debts must be claimed within a specific time period. Accordingly, the Board finds that the Intermediary's proposal to disallow all bad debts not claimed within a three year window is without merit. Secondly, the Intermediary's treatment (denial) of the cross-over bad debts claim does not constitute a denial of a reopening under 42 C.F.R. [§] 405.1885 or HCFA Pub. 15-1 § 2931.2. The regulation and manual both require that the Intermediary give the Provider a written notice of a decision to reopen. In the instant case, the Provider claimed the costs for all the years in dispute on the 1994 Medicare cost report. The Intermediary's adjustment was made to the FYE 1994 cost report as opposed to reopening the years in dispute.

DECISION AND ORDER:

The Intermediary's adjustment to Medicare bad debts is affirmed. However, the basis for the adjustment is modified as discussed above. The Board also notes that the Intermediary allowed claimed bad debts for those years (that were subject to reopening-1990 through 1994) although these years were not a part of this appeal. The bad debts for those periods were allowed in the 1994 fiscal year. Evidence in the record clearly supports the unpaid deductible and coinsurance amounts. The Board supports the Intermediary's allowance of these amounts to the extent they are in concert with the existing bad debt regulations.[7]

---

[7]Plaintiff's evidentiary submission (doc. no. 11), Exhibit 1.

Plaintiff appealed the Board's decision to Tomas Scully, Administrator of the Department of Health and Human Services' Provider Reimbursement Review Board, asking that he:

> cause the decision and order of the Provider Reimbursement Review Board to be altered, amended or revised to reflect a decision that the Intermediary pay to the Provider the aforesaid conceded amount with interest thereon; and the Provider moves and requests for such other, further and additional relief as shall be appropriate.[8]

Scully declined to review the Board's decision on September 27, 2001, and stated in the following letter mailed to plaintiff:

> This is to advise that the Administrator of the Centers for Medicare & Medicaid Services (CMS) has declined to review the decision entered by the Provider Reimbursement Review Board in the captioned case.
>
> If the Provider wishes to obtain judicial review of the matter, civil action must be initiated within 60 days of the date the Board's decision was received in accordance with 42 CFR 405.1877.[9]

---

[8]*Id.*, Exhibit 2, at unnumbered page 2.

[9]42 C.F.R. § 405.1877 provides:

(a) General rule. Section 1878(f) of the Act permits a provider to obtain judicial review of a final decision of the Board, or of a reversal, affirmation, or modification by the Administrator of a Board decision, by filing a civil action pursuant to the Federal Rules of Civil Procedure within 60 days of the date on which the provider received notice of–

(1) A final decision by the Board; or

(2) Any reversal, affirmance, or modification by the Administrator.

The Board's decision is not final if the Administrator reverses, affirms or modifies the decision within 60 days of the date on which the provider received notice of the decision.

(b) Administrator declines to review a Board decision. If the Administrator declines to review a Board decision, the provider must file its appeal within 60 days of receipt of the decision of the Board.

(c) Administrator does not act after reviewing a Board decision. If the Administrator notifies the parties that he or she has decided to review a Board decision and then does not make a decision within the 60 days allotted for his or her review, this subsequent inaction constitutes an affirmance allowing a provider an additional 60 days in which to file for judicial review, beginning with the date the Administrator's time expires for taking action under § 405.1875(g)(2).

(d) Matters not subject to judicial review. Certain matters affecting payments to hospital under the prospective payment system are not subject to judicial review, as provided in section 1886(d)(7) of

Plaintiff filed this action on October 10, 2001. Seven days later, Blue Cross and Blue Shield of Alabama, acting in the capacity of Intermediary, mailed the following notice to plaintiff:

> NOTICE OF CORRECTION OF AMOUNT OF MEDICARE PROGRAM REIMBURSEMENT AND FINAL SETTLEMENT PREVIOUSLY ISSUED ON July 30, 1996 FOR ATHENS-LIMESTONE HOSPITAL, PROVIDER NUMBER 01-0079 FOR THE COST REPORTING PERIOD FROM October 1, 1993 THROUGH September 30, 1994
>
> In accordance with 42 CFR 405.1887[10] and 405.1889,[11] this is your Notice of Correction of Amount of Medicare Program Reimbursement for the cost reporting period indicated above. As a result of our further examination of this cost report, we have determined that the corrected total Medicare program reimbursement due your facility is $8,218,361.00. Please be informed that within three years of this date, a revision of this notice may be required by the findings of an audit of this or any prior or subsequent cost report.

---

the Act and § 405.1804.

(e) Group appeals. Any action under this section by providers that are under common ownership or control (see § 413.17 of this chapter) must be brought by the providers as a group with respect to any matter involving an issue common to the providers.

(f) Venue for appeals. An action for judicial review must be brought in the District Court of the United States for the judicial district in which the provider is located (or, effective April 20, 1983, in an action brought jointly by several providers, the judicial district in which the greatest number of such providers are located) or in the District Court for the District of Columbia. Effective April 20, 1983, any action for judicial review by providers under common ownership or control (§ 413.17 of this chapter), must be brought by such providers as a group with respect to any matter involving an issue common to the providers.

(g) Service of process. Process must be served as described under 45 CFR Part 4.

[10]42 C.F.R. § 405.1887 provides:

(a) All parties to any reopening described above shall be given written notice of the reopening. When such reopening results in any revision in the prior decision notice of said revision or revisions will be mailed to the parties with a complete explanation of the basis for the revision or revisions. Notices of reopenings by the Board shall also be sent to the Secretary.

(b) In any such reopening, the parties to the prior decision shall be allowed a reasonable period of time in which to present any additional evidence or argument in support of their position.

[11]42 C.F.R. §§ 405.1889 provides:

Where a revision is made in a determination or decision on the amount of program reimbursement after such determination or decision has been reopened as provided in § 405.1885, such revision shall be considered a separate and distinct determination or decision to which the provisions of §§ 405.1811, 405.1835, 405.1875 and 405.1877 are applicable. (See § 405.1801(c) for applicable effective dates.)

Based on the attached Calculation of Total Medicare Program Reimbursement and Final Settlement, we have determined that an additional $63,208.00 is due the provider. This amount represents the corrected Medicare final settlement for the above cost reporting period. Our payment for this amount will be in your October 26, 2001 remittance.

In accordance with 42 CFR 405.378ff, interest will be assessed on amounts due the program unless full payment is made within 30 days from the date of notice. Interest will be assessed for each 30-day period, or part thereof, that payment is delayed. Similarly, interest will be paid on amounts due the provider if full payment is not made within 30 days from the date of notice.

Any differences between the amounts on the corrected cost report and those on the previously settled report are reflected in the Adjustment Report contained in the enclosed copy of the corrected cost report. The Adjustment Report reflects the individual adjustments made and includes appropriate reference to and citations of applicable law, regulations, HCFA Rulings and/or general instructions used as a basis for this corrected determinations. If additional explanation is needed for any of the adjustments, please contact this office. A copy of your "Appeal Rights/Filing Instructions" is attached.[12]

The Intermediary remitted payment in the amount of $63,208 on October 26, 2001.[13]

## II. DISCUSSION

### A.    Mootness

The first question this court must decide is whether the payment of the underlying principal amount in controversy, $63,208, makes plaintiff's claim for interest under 42 U.S.C. § 1395oo(f)(2) moot.[14] In *Florida Right to Life, Inc. v. Lamar*, 273 F.3d 1318 (11th Cir. 2001), the Eleventh Circuit observed that:

Article III of the United States Constitution fundamentally limits the jurisdiction of federal courts to actual "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1; *Georgia State Conf. of NAACP Branches v. Cox*, 183 F.3d 1259, 1262 (11th Cir. 1999). "Before rendering a decision ... every federal court operates under an

---

[12]*Id.*, Exhibit 5, at unnumbered page 1.

[13]Federal Defendants' Memorandum in Support of Motion to Dismiss and/or For Summary Judgment (doc. no. 8), at 11; *see also* Plaintiff's Brief in Opposition to Summary Judgment (doc. no. 12), unnumbered page 1.

[14]*See supra*, note 1.

independent obligation to ensure it is presented with the kind of concrete controversy upon which its constitutional grant of authority is based...." *Hallandale Prof'l Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 759 (11th Cir. 1991).

*Florida Right to Life,* 273 F.3d at 1322. In the present case, defendant argues that plaintiff

> seeks a judgment ordering the Intermediary to pay it the principal sum of $63,208.00 in additional Medicare reimbursement for its FYE 1990 cost year.... However, pursuant to the administrative decision rendered in favor of the Provider, the Intermediary remitted the full principal amount to the Provider.... The Secretary's payment of this claim means that there is no live case or controversy between the parties *with regard to the principal amounts sought by the Provider.*[15]

As the emphasized portion of the foregoing quotation is intended to indicate, however, defendant's

argument does not address plaintiff's claim for *interest* on the principal amount paid subsequent to

the institution of this action.

In the absence of authority on point within the Eleventh Circuit, this court turns to the

District of Columbia Circuit, which decided a factually similar case in *Tuscon Medical Center v.*

*Sullivan*, 947 F.2d 971 (D.C. Cir. 1991). That court addressed the issue of mootness in the following

manner:

> A federal court lacks jurisdiction to consider the merits of claims that are deemed "moot," because "the judicial power extends only to cases or controversies." *Powell v. McCormack*, 395 U.S. 486, 496 n.7, 89 S.Ct. 1944, 1950 n.7, 23 L.Ed.2d 491 (1969). A case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *Id.* at 496, 89 S.Ct. at 1950-51.

> The district court dismissed appellants' claims as moot. The court concluded that "the parties lacked 'a legally cognizable interest in the outcome' of this action from the time it was filed." *Tuscon*, 748 F. Supp. at 30 (quoting *Powell*, 395 U.S. at 4496, 89 S.Ct. at 1950-51.) In the alternative, the district court suggested that any "potential dispute" became moot with "the Secretary's actual payment in full of the underlying claim...." *Id.* at 31. We shall consider both alternatives.

---

[15]Federal Defendant's Memorandum in Support of Motion to Dismiss and/or For Summary Judgment (doc. no. 8), at 12 (emphasis supplied).

It is well-settled that "[w]here one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy." *Powell*, 395 U.S. at 497, 89 S.Ct. at 1951; *Ramer v. Saxbe*, 522 F.2d 695, 704 (D.C. Cir. 1975) ("A case is not moot so long as any single claim for relief remains viable, whether that claim was the primary or secondary relief originally sought."). So, for example, where a memorandum of understanding effectively settles the claims of the trustees of an employee benefit fund against an employer, it does not render moot any secondary claims that the trustees might have for liquidated damages or interest on delinquent contributions. *Ottley v. Sheepshead Nursing Home*, 784 F.2d 62, 66 (2d Cir. 1986) ("[t]hese unsatisfied claims preserve the viability of the action and defeat the mootness argument"). Similarly, even though a union defendant has been decertified as the bargaining representative for plaintiffs — thereby rendering moot plaintiffs' principal claim for injunctive relief against the carrying out of the union's rebate scheme — plaintiffs' claims for money damages are not moot. *Ellis v. Brotherhood of Ry., Airline & S.S. Clerks*, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984).

> [D]amages for an illegal rebate program would necessarily have been in the form of interest on money illegally held for a period of time. That claim for damages remains in the case. The amount at issue is undeniably minute. But as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.

*Id.* at 42, 104 S.Ct. at 1889.

For these reasons, appellants' interest claims are moot only if the underlying reimbursement claims were moot at the time they were filed. If appellants presented a "case or controversy" as to the reimbursement on January 25, 1989, their claims for interest would not subsequently have become moot simply because the Secretary paid the underlying claims. It is undisputed that the payments in February and March of 1989 did not include interest.

The Secretary argues that appellants' claims were indeed moot at the time the complaint was filed.... The Secretary argues that the intention of the HCFA was clearly to settle all pending claims challenging the retroactive application of the 1984 wage index. And yet, three weeks *after* the January 4 Memorandum, appellants filed suit.

The Secretary's argument is ultimately unconvincing.... Had appellants chosen not to file suit within the sixty-day statutory period — in other words, had they interpreted the January 4 Memorandum as definitively settling their claims — it is quite possible that they would no longer have had "properly pending" administrative or judicial appeals. Both the January 4 Memorandum and HCFAR 89-1 explicitly conditioned the Secretary's acquiescence to those claims that "satisfy

the jurisdictional requirements imposed by 42 U.S.C. [§] 1395oo."

Furthermore, there is no dispute that appellants properly petitioned for expedited judicial review, that the PRRB granted their petitions, and that they filed suit within the requisite time period. The constitutional "case or controversy" requirement and the statutory jurisdictional requirement boil down to the same question: Was there an "amount in controversy" at the time the suit was filed? Over eighty-years ago, the Supreme Court stated in the context of diversity jurisdiction that

[i]t is not necessary that the defendant should controvert or dispute the claims. It is sufficient that he does not satisfy it. It might be that he could not truthfully dispute it, and yet, if from inability, or, mayhap, from indisposition, he fails to satisfy it, it cannot be that because the claim is not controverted the Federal court has no jurisdiction of an action brought to enforce it. Jurisdiction does not depend upon the fact that the defendant denies the existence of the claim made, or its amount or validity. If it were otherwise, then the circuit court would have no jurisdiction if the defendant simply admitted his liability and the amount thereof as claimed, although not paying or satisfying the debt.

*In re Reisenberg*, 208 U.S. 90, 108, 28 S.Ct. 219, 223-24, 52 L.ED. 403 (1908). The Secretary had been refusing to pay appellants for over three years; his cryptic concession of error in the January 4 Memorandum was insufficient for appellants reasonably to conclude that their claims would be satisfied absent the filing of their suit in federal court....

On January 25, 1989, appellants' claims for reimbursement were not moot. When the Secretary finally settled the principal reimbursement claims, appellants' claims for interest remained....

*Tuscon Medical Center*, 947 F.2d at 977-979.

Similarly, in the present action, defendant acknowledged that plaintiff was owed the principal sum of $63,208 during the Provider Reimbursement Review Board's hearing conducted prior to the filing of this action. Even so, plaintiff chose to file its complaint despite defendant's admission. Plaintiff filed the complaint on October 10, 2001, at which time the $63,208 which defendant admitted owing plaintiff had not been paid. Thus, like the appellants in *Tuscon Medical Center*, had plaintiff failed to file suit within the sixty-day statutory period, plaintiff would have

14

waived any right to judicial review if the defendant changed position, and ultimately decided not to pay the principal sum of $63,208. Plaintiff also would have waived any right to pursue interest on the principal amount under 42 U.S.C. § 1395oo(f)(2). Furthermore, plaintiff's claim for interest, as in *Tuscon Medical Center*, remains even after defendant tendered payment of $63,208. Therefore, this court finds that plaintiff's claim that it is entitled to interest on the principal amount of $63,208 is not rendered moot.

**B.      Timeliness of Action**

As the Supreme Court observed in *Your Home Visiting Nurse Services, Inc. v. Shalala*, 525 U.S. 449, 119 S.Ct. 930, 142 L.Ed.2d 919 (1999),

> [u]nder the Medicare Act, Title XVIII of the Social Security Act, 79 Stat. 290, as amended, 42 U.S.C. § 1395 *et seq*. (1994 ed. and Supp. II), the Secretary of Health and Human Services reimburses the providers of covered health services to Medicare beneficiaries, *see* §§ 1395f(b)(1), 1395h, 1395x(v)(1)(A). A provider seeking such reimbursement submits a yearly cost report to a fiscal intermediary (generally a private insurance company) that acts as the Secretary's agent. *See* 42 C.F.R. § 405.1801(b) (1977). The intermediary analyzes the cost report and issues a Notice of Program Reimbursement (NPR) determining the amount of reimbursement to which the provider is entitled for the year. *See* § 405.1803.
>
> As is relevant here, a dissatisfied provider has two ways to get this determination revised. First, a provision of the Medicare Act, 42 U.S.C. § 1395, allows a provider to appeal, within 180 days, to the Provider Reimbursement Review Board (Board) — an administrative review panel that has the power to conduct an evidentiary hearing and affirm, modify, or reverse the intermediary's NPR determinations. The Board's decision is subject to judicial review in federal district court. § 1393oo(f)....

*Shalala,* 525 U.S. at 449, 119 S.Ct. at 931. The Eleventh Circuit further observed in *Alacare Home Health Services, Inc. v. Sullivan*, 891 F.2d 850 (11th Cir. 1990), that

> [i]f the provider is dissatisfied with the intermediary's determination and the amount in controversy is $10,000 or more, the provider may, within 180 days, request a hearing before the Provider Reimbursement Review Board (PRRB). 42 U.S.C. § 1395oo; 42 C.F.R. § 405.1841(a). The PRRB has the power to affirm,

modify, or reverse a final determination of the fiscal intermediary.  42 U.S.C. §
1395oo(d).  Additionally, the PRRB may, upon a showing of good cause by the
provider, grant a waiver of the 180 day filing deadline.  42 C.F.R. § 405.1841(b).
Within 60 days after the PRRB renders its decision, the Secretary, acting through the
Deputy Administrator of the Health Care Financing Administration, on his own
motion, may reverse, affirm, or modify the PRRB's decision.  42 U.S.C. §
1395oo(f)(1); 42 C.F.R. § 405.1872.  The district court has jurisdiction to review the
final decision of the PRRB or the Deputy Administrator pursuant to the Medicare
Act, 42 U.S.C. § 1395oo(f), and the Administrative Procedure Act, 5 U.S.C. § 701,
*et seq.*

*Sullivan*, 891 F.2d at 853.

Plaintiff brought the current action pursuant to 42 U.S.C. § 1395oo(f)(1), which provides that

[a] decision of the Board shall be final unless the Secretary, on his own
motion, and within 60 days after the provider of services is notified of the Board's
decision, reverses, affirms, or modifies the Board's decision. *Providers shall have
the right to obtain judicial review of any final decision of the Board*, or of any
reversal, affirmance, or modification by the Secretary, *by a civil action commenced
within 60 days of the date on which notice of any final decision by the Board or of
any reversal, affirmance, or modification by the Secretary is received....*

42 U.S.C. § 1395oo(f)(1) (emphasis supplied).  Thus, under § 1395oo(f)(1), a plaintiff has the right

to appeal the final decision of the Provider Reimbursement Review Board ("Board") to this court;

however, the plaintiff must file within 60 days from *receipt* of the Board's final decision.  In the

present case, plaintiff filed its complaint on the 63rd day after the Board *rendered* its decision.

Plaintiff does not present any evidence of the date on which it *received* notice of the Board's

decision.  Even so, defendant does not argue that plaintiff's complaint is untimely.  Therefore,

because the 60 day filing requirement is a statute of limitation, as opposed to a jurisdictional

requirement, it can be waived; and this court finds that any argument as to the timeliness of

plaintiff's complaint has been waived.  *See Lloyd Noland Hospital and Clinic v. Heckler*, 762 F.2d

1561, 1564 (11th Cir. 1985) ("We are persuaded that the 60 days is a statute of limitation.  The filing

time within the Social Security Act is a statute of limitation, *Mathews v. Eldridge*, 424 U.S. 319, 328

n.9, 96 S.Ct. 893, 899 n.9, 47 L.Ed.2d 18 (1976); *Weinberger v. Salfi*, 422 U.S. 749, 763-64, 95

S.Ct. 2457, 2456-66, 45 L.Ed.2d 522 (1975), and both acts have similar appeals provisions.

*Compare* 42 U.S.C. § 405(g) *with* 42 U.S.C. § 1395oo(f)(1). *See V.N.A. of Greater Tift County, Inc.*

*v. Heckler*, 711 F.2d 1020, 1024 & n.6 (11th Cir. 1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1908,

80 L.Ed.2d 457 (1984).").

**C.      Requirements under 24 U.S.C. § 1395oo(f)(2)**

Defendant argues that plaintiff is not entitled to interest, because it failed to meet the

requirements of 42 U.S.C. § 1395oo(f)(2), providing that:

> (2)  Where a provider seeks judicial review pursuant to paragraph (1), the amount in controversy shall be subject to annual interest beginning on the first day of the first month beginning after the 180-day period as determined pursuant to subsection (a)(3) of this section and equal to the rate of return on equity capital established by regulation pursuant to section 1395x(v)(1)(B) of this title and in effect at the time the civil action authorized under paragraph (1) is commenced, to be awarded by the reviewing court in favor of the prevailing party.

In addressing defendant's second argument, the court again finds it helpful to turn to the opinion of

the District of Columbia Circuit in *Tuscon Medical Center*.

> There is no dispute that the doctrine of sovereign immunity limits the appellants' rights to interest on claims for Medicare reimbursement to that which is expressly authorized by statute. *Library of Congress v. Shaw*, 478 U.S. 310, 311, 106 S.Ct. 2957, 2959-60, 92 L.Ed.2d 250 (1986) ("The no-interest rule is to the effect that interest cannot be recovered in a suit against the Government in the absence of an express waiver of sovereign immunity from an award of interest.") Such a waiver must be strictly construed in favor of the government. *McMahon v. United States*, 342 U.S. 25, 26, 72 S.Ct. 17, 18, 96 L.Ed. 26 (1951); *Georgetown Univ. Hosp. v. Sullivan*, 934 F.2d 1280, 1287 (D.C. Cir. 1991).
>
> Under the applicable statute,
>
> [w]here a provider seeks judicial review pursuant to [42 U.S.C. § 1395oo(f)(1)], the amount in controversy shall be subject to annual interest beginning on the first day of the first month beginning after the 180-day period [after the issuance of the fiscal intermediary's final NPR] ... to be

awarded by the reviewing court in favor of the prevailing party.

42 U.S.C. § 1395oo(f)(2) (1988). There are three issues to resolve: First, whether appellants sought judicial review pursuant to 42 U.S.C. § 1395oo(f)(1); second, whether there was an "amount in controversy"; and third, whether appellants were the "prevailing part[ies]."

1. Judicial Review

In this case, appellants have clearly exhausted their administrative remedies under 42 U.S.C. § 1395oo(f)(1). In November 1988, they filed petitions to obtain judicial review of the fiscal intermediaries' reimbursement determination with respect to the TEFRA year. The PRRB granted their petitions for expedited review. Within sixty days, they filed suit in district court. It is thus clear that appellants properly sought judicial review of the fiscal intermediaries' determination.

*Tuscon Medical Center*, 947 F.2d at 979. In the present case, plaintiff petitioned for review of the Intermediary's determination as to the amount of bad debt reimbursement owing to plaintiff on January 23, 1997. The Board granted review, and ultimately rendered its decision on August 8, 2001. Plaintiff appealed to the Administrator, and the Administrator declined to review the Board's decision. Plaintiff then sought judicial review in this court pursuant to 42 U.S.C. § 1395oo(f)(1). Thus, plaintiff clearly exhausted its administrative remedies before pursuing judicial review in this court.

When discussing the amount in controversy, the District of Columbia Circuit in *Tuscon Medical Center* also stated:

In granting their petitions for expedited review, the PRRB expressly found that there was an "amount in controversy." Indeed, the PRRB does not have jurisdiction to hear an appeal from the fiscal intermediary's determination unless "the amount in controversy is $10,000 or more," 42 U.S.C. § 1395oo(a)(2) (1988), and the PRRB has authority to grant expedited review only after it first determines that the provider is entitled to a hearing under § 1395oo(a), *see* 42 C.F.R. § 405.1842(b)(2) (1990). In other words, simply by granting the petitions for expedited review, the PRRB necessarily found that there existed an amount in controversy in excess of $10,000.

18

...

> It is well-settled that the "amount in controversy" must be determined as of the date the suit was filed. *Hospital Ass'n of Rhode Island v. Secretary of Health & Human Servs.*, 820 F.2d 533, 537 n.9 (1st Cir. 1987). We have already concluded that when appellants filed suit on January 25, 1989, there existed an amount in controversy such that their claims were not moot.

*Id.* at 980. Similarly, when plaintiff filed the current action, the amount in controversy was well beyond the $10,000 requirement.

As to the prevailing party issue, the District of Columbia Circuit further stated:

> The facts concerning whether or not appellants were "prevailing part[ies]" are not in dispute; the only question is whether the undisputed facts support the conclusion that appellants prevailed and are therefore entitled to interest within the meaning of § 1395oo(f)(2).

> The Secretary argues that in the absence of a statutory definition of "prevailing party," we ought to defer to the agency's interpretation of that term.... The secretary contends that the agency's regulation implementing § 1395oo(f)(2) definitively requires that there be a judgment prior to the award of any interest:

>> If a provider of services seeks judicial review by a Federal court ... of a decision furnished by the Provider Reimbursement Review Board or subsequent reversal, affirmation, or modification by the Secretary, the amount of any award of such Federal court will be increased by interest payable by the party against whom the judgment is made....

42 C.F.R. § 413.64(j)(1) (1990) (emphasis added).

> But the Secretary's regulation is irrelevant. Section 1385oo(f)(2) is expressly directed to the judiciary. It provides that interest shall "be awarded *by the reviewing court* in favor of the prevailing party," 42 U.S.C. § 1395oo(f)(2) (1988) (emphasis added). The deference normally accorded to the administrative agency's interpretation of its own statute is simply inapplicable when the statutory provision is not one directed to the agency's administration of the law. "A precondition to deference under *Chevron* [*U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)] is a congressional delegation of administrative authority." *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 110 S.Ct. 1384, 1390, 108 L.Ed.2d 585 (1990); *see also Crandon v. United States*, 494 U.S. 152, 177, 110 S.Ct. 997, 1011, 108 L.Ed.2d 132 (1990) (Scalia, J., concurring) (law that "is not administered by any agency but by the courts" is not entitled to deference

under *Chevron*).

To our knowledge, no court has had occasion to interpret the meaning of "prevailing party" in § 1395oo(f)(2). However, the legislative history of the provision is suggestive. Prior to 1974, providers had a right to judicial review only where the Secretary reversed or adversely modified a favorable decision of the PRRB. The new provision gave

> to providers of services the right to judicial review of any Provider Reimbursement Review Board decision, as well as of any subsequent affirmations, modifications or reversals by the Secretary. In addition, when a provider seeks judicial review, the amount in controversy shall be subject to annual interest beginning 6 months after the intermediary has made a final determination....

S.REP. NO. 1065, 93d Cong., 2d Sess. 4 (1974), *reprinted in* 1974 U.S.C.C.A.N. 5992, 5995. The Conference Report indicated that "[t]he amendment would permit judicial review of the Board's unmodified findings as well. In addition, interest would be paid to the party who won — the government or provider." H.R.CONF.REP. NO. 1407, 93d Cong., 2d Sess. 3 (1974), *reprinted in* 1974 U.S.C.C.A.N. 5995, 5996.

In the case of this statute, however, where the primary goal is to compensate the party who eventually receives the money for the delay occasioned by the other party's error, the nexus is explicit in the statute itself: Interest will be awarded only after suit is properly filed, which in turn means that the Secretary's agency has made a determination adverse to the provider. From this perspective, a party in court prevails as soon as it receives the disputed amount.

[T]here is no question that appellants have received the relief they sought when filing this suit, albeit through settlement rather than through judgment of the court. We believe the lawsuit was "necessary" in light of the Secretary's decision to limit payment to "all pending ... appeals that ... satisfy the jurisdictional requirements imposed by 42 U.S.C. [§] 1395oo." HCFAR 89-1 at 10. Had appellants not filed suit within the sixty-day period, the Secretary might well have claimed that they failed to satisfy the requirements of § 1395oo(f)(1) and that, therefore, the concession in HCFAR 89-1 did not apply to them.

In sum, we believe that appellants have fully met the traditional test for prevailing parties generally applied to fee-shifting statutes.

*Id*. at 982-983. In keeping with the District of Columbia Circuit's persuasive and well reasoned

opinion, defendant cannot tender payment of the underlying disputed amount in an attempt to

prevent plaintiff from receiving a favorable judicial decision and, subsequently, classification as a "prevailing party." Defendant's admission that plaintiff is entitled to reimbursement of $63,208 for bad debt claims, and defendant's payment of that amount to plaintiff, effectively renders plaintiff the prevailing party. The fact that the parties settled one of plaintiff's claims without the need to procure an actual decision by this court does not make plaintiff any less a prevailing party. Therefore, plaintiff is a prevailing party under the terms of 42 U.S.C. § 1395oo(f)(2).

In sum, the parties do not dispute the facts but, instead, how those facts should be interpreted under applicable law. The court finds that the plaintiff fulfilled all the statutory requirements for maintaining an action under 42 U.S.C. § 1395oo(f), and for recovering interest under 42 U.S.C. § 1395(f)(2). Therefore, because this court finds that all the issues are due to be resolved in favor of plaintiff, the defendant's motion to dismiss or, in the alternative, for summary judgment is denied.

An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this **20**th day of February, 2002.

_____
United States District Judge